**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

JASON PUTSCHE,                              *

     Plaintiff,                          *

v.                                          *          Case No.: PWG-17-255

ALLEY CAT ALLIES, INC.,                     *

     Defendant.                          *

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

**MEMORANDUM OPINION**

     Jason Putsche is a photographer doing business as Jason Putsche Photography ("JPP").

He entered into an agreement in 2008 with Alley Cat Allies, Inc. ("ACA"), "a national advocacy

organization . . . dedicated to the protection and humane treatment of cats," under which Mr.

Putsche took photographs ("JPP Photographs") and video footage of cats ("Cat Videos") for

ACA.  ACA's employee Elizabeth Parowski arranged for the contract between Putsche and

ACA.  She later entered into a professional and personal relationship with Mr. Putsche, worked

for JPP, married Mr. Putsche, and became Mrs. Elizabeth Putsche.  She left her employment with

ACA but continued to work for the company as an independent contractor.

     Eventually, disputes arose between Mrs. Putsche and ACA regarding her compensation,

and ACA also disagreed with the Putsches and JPP (together, the "Putsche Parties") about

copyright ownership for the JPP Photographs and Cat Videos and the terms under which the

parties could use the works.  Mrs. Putsche and ACA litigated their claims against each other in

Maryland state court ("State Court Action"), while ACA pursued claims against the Putsche

Parties in the United States District Court for the District of New Jersey ("Federal Action").  The

State Court Action resulted in a settlement agreement that addressed compensation as well as copyright ownership and usage rights ("Settlement Agreement"); the Federal Action was dismissed without prejudice. Unfortunately, the resolution of the Federal Action and the State Court Action did little to resolve the differences between the Putsches and ACA, and they continue to nourish their animosity towards one another in this litigation.

In the convoluted litigation that has progressed in this Court, described in further detail below, Mr. Putsche has filed claims against ACA, Am. Compl., ECF No. 6 in *Putsche v. Alley Cat Allies* ("*Putsche II*"), No. TDC-17-1197; ACA has filed claims against the Putsche Parties, Am. Countercl. & 3d Party Compl., ECF No. 37; and the parties have filed cross-motions to dismiss all of the claims, ECF Nos. 61, 62.[1] Because both parties have stated plausible claims, I will deny ACA's motion in its entirety and deny the Putsche Parties' motion as to ACA's claims against Jason and Elizabeth Putsche and JPP for breach of contract and copyright infringement, and its claim against Jason Putsche and JPP for promissory and equitable estoppel (ACA's Counts I, III, VII). But, because breach of the implied covenant of good faith and fair dealing (ACA's Count II) is not a stand-alone cause of action under Maryland law, ACA fails to state a claim for fraud (ACA's Count IV) or tortious interference with contractual relations or prospective advantage (ACA's Count V), and ACA consents to the dismissal of its conversion claim (ACA's Count VI), I will dismiss Counts II, IV, V, and VI of ACA's Amended Counterclaim and Third Party Complaint. And, I will dismiss the promissory estoppel/equitable estoppel claim (ACA's Count III) as to Elizabeth Putsche only.

---

[1] The parties fully briefed the motions. ECF Nos. 61-1, 62-1, 63, 64. A hearing is not necessary. *See* Loc. R. 105.6.

**<u>Documents under Consideration</u>**

For the purposes of resolving the Putsche Parties' Motion to Dismiss, I accept the facts alleged in ACA's Amended Counterclaim and Third Party Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). Likewise, for the purposes of resolving ACA's Motion to Dismiss, I accept the facts alleged in Mr. Putsche's Amended Complaint as true. *See id.* And, the Copyright Registrations (ECF No. 1-1 in *Putsche II*; ECF No. 37-4) and written memorialization of the parties' oral Settlement Agreement (ECF No. 37-2), which are attached to the pleadings, are written instruments that are a part of the pleadings for all purposes. *See* Fed. R. Civ. P. 10(c). ACA also attached a transcript and orders from the State Court Action. ECF Nos. 7-2, 37-1, 37-3. I may take judicial notice of those documents, as well as the State Court Docket. *See* Fed. R. Evid. 201(b)(2); http://casesearch.courts.state.md.us/casesearch/inquiry Search.jis (State Court Docket).

Both sides also attached documents in support of their cross-motions to dismiss and in opposition to the other side's motion. These documents include the Copyright Registrations, ECF No. 61-2, which already are a part of the record. They also include pleadings and an order from the State Court Action the Federal Action, ECF Nos. 61-3 – 61-6, 62-4, 62-5, of which I also may take judicial notice, *see* Fed. R. Evid. 201(b). And, they include invoices, emails, printouts from ACA's website, and a contract between the parties that does not pertain to taking photographs and videos.

"[C]ourts may consider a document that the defendant attaches to its motion to dismiss if the document was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (citation omitted). Courts also may consider documents attached to an opposition

to a motion to dismiss, if they are "integral to and explicitly relied on in the complaint" and the plaintiff "agrees that the [documents] are authentic." *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222–23 & n.2 (4th Cir. 2009); *see also Quigley v. United States*, 865 F. Supp. 2d 685, 692 (D. Md. 2012) (citing *Robinson* and relying on letter attached to defendant's motion, as well as letter attached to plaintiff's opposition, "in resolving the pending motion to dismiss without converting it to a motion for summary judgment," because the letters were "integral to the complaint and their authenticity [wa]s not challenged"). A document is "integral" if it, "by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007) (emphasis from *Chesapeake Bay* removed). For example, "the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute" are integral. *Id.* (quoting *Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, No. JFM-10-206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010)).

In support of its Opposition to the Putsche Parties' Motion and its own Motion to Dismiss, ACA attached invoices, ECF No. 62-2; an Independent Contractor Agreement between JPP and ACA (that does not cover taking photographs and videos), ECF No. 62-3; emails between counsel, ECF Nos. 62-6 – 62-9; and website pages, ECF No. 62-10. It asks the Court to take judicial notice of these documents that "are referred to and corroborate ACA's factual allegations, which are disputed by the Putsches." ACA Mem. 11 n.7. With the exception of the invoices, none of these is integral to or relied on in Putsche's or ACA's pleading, and therefore I will not consider them. *See CACI Int'l*, 566 F.3d at 154; *Robinson*, 551 F.3d at 222–23 & n.2. As for the invoices, however, ACA claims that it "owns all right and title in the JPP photographs

by virtue of an explicit contractual sale by the Putsches, individually or collectively, to ACA of all right and title therein," and that the invoices "expressed" the parties' "understanding and agreement" that "ACA owned full ownership rights, including copyrights, in the JPP Photographs and [Cat Videos]." Am. Countercl. & 3d Party Compl. ¶¶ 26, 139. Thus, the invoices are both integral to and explicitly relied on in the pleading. *See Chesapeake Bay*, 794 F. Supp. 2d at 611. And, the Putsche Parties do not challenge their authenticity. Accordingly, I will consider them in resolving the cross-motions without converting them to motions for summary judgment. *See CACI Int'l*, 566 F.3d at 154; *Robinson*, 551 F.3d at 222–23 & n.2.

To their Reply and Opposition, the Putsche Parties attached a series of emails from October 9, 2008 between Jason Putsche and Elizabeth Putsche (then Parowski), who at the time was employed by and writing on behalf of ACA. Emails, ECF No. 63-1. In the first email, she informed him that she "work[ed] for a non-profit organization that focuses on stray and feral cats," and she asked if he "could give [her his] rates and conditions of ownership for photos" to be "used for either [ACA's] website . . . , in [its] printed literature, or [its] fundraising materials." *Id*. at 3–4. Mr. Putsche replied that he "usually come[s] up with a flat fee for the time & distance, and the fee includes all images in high res on a disk and the full rights for [ACA] to use them as [ACA saw] fit." *Id.* at 3. He stated that his "only condition to [ACA's] unlimited usage is that [he] be given bylines on all photos (either printed or posted online) whenever possible." *Id.* In response, she wrote:

> Full rights is great. We always credit photographers in printed materials – we do not credit on the website, but I am regularly contacted by people who want to use our online photos and I always direct them to the photographers. (We do not grant permission for anyone to use photos we have commissioned – if you wanted to, that is obviously your choice.)

*Id.* at 2.

In his Amended Complaint, Putsche alleges that ACA "contracted [him] to take photographs in exchange for a non-exclusive, limited license to the photographs," and that "ACA occasionally licensed, on identical terms, additional photographs that Mr. Putsche took of his own accord." Am. Compl. 1. He claims that "ACA and Mr. Putsche agreed that, upon payment for the photographs, ACA would receive full, unlimited usage rights to the photographs, subject to the limitation that ACA give Mr. Putsche credit on each and every one of his photographs used in printed materials," and that "ACA agreed that Mr. Putsche would retain all copyright rights in the photographs." *Id.* ¶¶ 9–10. And, he asserts that "[t]he ACA employee who contracted Mr. Putsche on behalf of the company in 2008 was Elizabeth Parowski . . . ." *Id.* ¶ 16. In their Reply & Opposition, the Putsche Parties refer to the email exchange as an "agreement," contending that "Mr. Putsche issued ACA a nonexclusive license and expressly conditioned it upon receipt of photo credit . . . ." Putsche Reply & Opp'n 10. Thus, the email exchange is the agreement between ACA and Mr. Putsche that he explicitly references in his Amended Complaint as a "non-exclusive, limited license." As such, it is integral to his claim that there was an agreement between the parties regarding rights in his work. Moreover, even though ACA disputes whether the email chain relied upon by Mr. Putsche is a license, neither side disputes its authenticity. *See id.* (relying on email chain in support of argument); ACA Reply 3, 9–10 (contending that email chain is not a license but relying on it in support of argument). Accordingly, I will consider it in resolving the parties' cross-motions without converting them to motions for summary judgment. *See CACI Int'l*, 566 F.3d at 154; *Robinson*, 551 F.3d at 222–23 & n.2.

## Background

Jason Putsche claims that he is "a professional photographer who, during all times relevant to this [litigation], did business as an unincorporated, sole proprietorship, Jason Putsche Photography ('JPP')." Am. Compl. ¶ 1. According to ACA, JPP is "an entity in which the Putsches are co-owners and/or partners." Am. Countercl. & 3d Party Compl. ¶ 3. In ACA's view, "the Putsches do not follow any corporate formalities," and, "[a]s a result of the fraudulent and improper actions of the Putsches', any corporate veil or limited liability that may exist for JPP must be pierced as a matter of law exposing the Putsches[] to personal liability for their actions." *Id.* ¶¶ 6–8. ACA urges the Court "to disregard the distinction between Jason Putsche, Elizabeth Putsche, and JPP and collectively attach liability, jointly and severally, among same." *Id.* ¶ 9.

The parties agree that, in 2008, Mr. Putsche and/or JPP entered into an agreement with ACA, under which Mr. Putsche took photographs ("JPP Photographs") and video footage of cats ("Cat Videos") for ACA. Am. Compl. ¶¶ 7–12; *see* Am. Countercl. & 3d Party Compl. ¶¶ 10, 20, 21. They also agree that ACA's Communications Manager Elizabeth Parowski (now Putsche) arranged for the contract with Jason Putsche and/or JPP. Am. Compl. ¶¶ 16, 22; Am. Countercl. & 3d Party Compl. ¶¶ 17, 20. But they disagree about the terms of the agreement and Elizabeth Putsche's role.

Jason Putsche insists the agreement was between "Mr. Putsche/JPP" and ACA, and that ACA purchased a non-exclusive license to the photographs he took for the organization, while Mr. Putsche retained the copyrights and received photo credits for his work. Am. Compl. ¶¶ 7–11. He claims that, with regard to the Cat Videos, "without further consideration, he licensed [them] to ACA under the same terms that applied to [his] photographs." *Id.* ¶ 12. According to

Jason Putsche, Ms. Parowski "began providing some photography services to Mr. Putsche/JPP" and later resigned from ACA and married him, although she continued to work for ACA on a contractual basis. *Id.* ¶¶ 20–25. She occasionally had "used her personal camera to take photographs of cats, ACA staff members, and various ACA events" and "permitted ACA to use these photographs," both when she worked as Communications Manager and when she worked for ACA contractually. *Id.* ¶¶ 18–19, 28.

ACA claims that Elizabeth Putsche's "employment responsibilities included taking photographs and arranging for ACA's purchase of exclusive rights to original photographs of a wide variety in various settings and poses for use by ACA in connection with its activities and mission." Am. Countercl. & 3d Party Compl. ¶ 15. According to ACA, Elizabeth Putsche "contacted JPP to perform photography services for ACA," and "JPP, by and through Jason Putsche and Elizabeth Putsche, took photographs ('JPP Photographs') and [Cat Videos] during the time period from 2008 through 2014." *Id.* ¶¶ 20–21. ACA insists that it was its policy "to purchase and maintain all rights in all original photography it uses for any purpose, and not to commission, pay for or use any photographs unless it has all ownership rights, including all copyrights," *id.* ¶ 13, and that the Putsches were aware of the policy and its application to the JPP Photographs and the Cat Videos, *id.* ¶¶ 16, 25–26. It asserts that "[s]uch acknowledgement, understanding and agreement was expressed in certain invoices provided by JPP to ACA." *Id.* ¶ 26. A July 22, 2009 invoice from JPP for photographs, videos, and related services it provided to ACA states that ACA was purchasing a disc with high resolution images and "Full Ownership rights." Invoices 35, ECF No. 62-2. Twelve others dated from October 23, 2009 through December 6, 2011 state that ACA was purchasing a disc with high resolution images and "full rights." *Id.* at 1, 5, 8, 12, 16, 20, 22, 26, 29, 30, 33, 34. Beyond these terse phrases, the

alternative descriptions of what Jason Putsche/JPP were conveying to ACA were not further defined.

Mr. Putsche claims that, in about November 2014, ACA stopped crediting him for his photography, in breach of the licensing agreement. Am. Compl. ¶¶ 32–36. According to ACA, around the same time, Elizabeth Putsche resigned from her independent contractor position with ACA "after disputes arose related to the ownership of the JPP Photographs [and Cat Videos], as well as payment for work Elizabeth Putsche allegedly performed under the independent contractor agreement." Am. Countercl. & 3d Party Compl. ¶ 28.

In February 2015, "Mrs. Putsche transferred and assigned to Mr. Putsche all of her rights (including all copyright rights) to, 'all photos of cats et al., taken between November 2008 and October 2014' that were identified on an application for copyright registration that Mr. Putsche was preparing to file with the United States Copyright Office." Am. Compl. ¶ 37. On February 18, 2015, Jason Putsche applied for and obtained copyright registration of these and hundreds of other photographs of cats. *Id.* ¶ 39. He registered additional photographs under the title "Jason Putsche Photography – Client Alley Cat Allies" on May 14, 2016. *Id.* ¶ 40. Together, the photographs he registered in 2015 and 2016 are the JPP Photographs. *Id.* And he registered the Cat Videos on May 11, 2016. *Id.* ¶ 42. ACA obtained its own copyright registration of "some or all" of the same photographs on May 12, 2016, based on an "application [tha]t identified the photographs as works for hire." *Id*. ¶¶ 43–45.

Meanwhile, on February 26, 2015, Elizabeth Putsche initiated the State Court Action against ACA in the Maryland District Court for Baltimore City, Case No. 0101-4282-2015, and when ACA counterclaimed and demanded a jury trial, the suit was transferred to the Maryland Circuit Court for Baltimore City, Case No. 24C15001950. ACA later waived the jury trial and

the case was remanded to the state district court at the parties' joint request. Tr. 3:5-8, ECF No. 37-1. Mrs. Putsche alleged breach of the independent contractor agreement, and ACA counterclaimed for breach of the same agreement and conversion, with regard to the Cat Videos. Am. Countercl. & 3d Party Compl. ¶¶ 29–30; *see* State Ct. Docket. Then, on May 31, 2016, ACA filed the Federal Action against the Putsche Parties and Photographers For Animals, Inc., a nonprofit that Mrs. Putsche had incorporated, alleging that ACA owned the rights to the photographs it hired Jason Putsche to take and claiming copyright infringement. Am. Compl. ¶¶ 46–49.

Jason Putsche and JPP were not parties to the State Court Action. *See* State Ct. Docket; State Ct. Compl. & Ans., ECF Nos. 62-4, 62-5. Nonetheless, ACA claims that Jason Putsche and JPP were represented by the same attorney who represented Elizabeth Putsche in the State Court Action, and who also jointly represented Jason Putsche, JPP and Elizabeth Putsche in the Federal Action. And, ACC maintains that Jason Putsche was present and participated in the settlement discussions in the State Court Action, in which the parties aimed "to resolve all their disputes, including those related to the ownership of the JPP Photographs and [Cat Videos]." Am. Countercl. & 3d Party Compl. ¶¶ 31–34. Indeed, ACA insists that "the Putsches' First Counsel confirmed that negotiations were between ACA and the Putsches," for the purpose of "settl[ing] all claims by and between ACA and the Putsches," and that "Jason Putsche was an active, direct and fully-engaged participant in those lengthy settlement discussions." *Id.* ¶¶ 38, 41–42.

In proceedings before the state court on June 2, 2016, a settlement agreement ("Settlement Agreement") was read into the record. *See* State Ct. Docket; Tr. The state judge noted that the parties had "virtually resolved . . . the actual case that [was] in front of [the state

court] which [was] the employment contract situation," but "some situation about photos up in New Jersey," that is, in the Federal Action, was "hanging . . . up" the case." Tr. 5:6-12. The judge said that he wanted "a package deal" that included "an agreement about those photos" at issue in the Federal Action, as he wanted the "whole case settled," although he noted that he did not "have jurisdiction over the photos in the New Jersey case." *Id.* at 5:12 – 6:17.

The Settlement Agreement included an $18,000 payment to "Plaintiff," listed as "Elizabeth Putsche," and an assignment of rights of two subsets of the JPP Photographs, with the remainder to "be divided between the parties in mediation." Tr. 7:11 – 8:4. ACA's attorney explained:

> They'll take turns by rounds selecting 1000 photos, with Plaintiff selecting the first 1000 photos up to a cap, okay. And a cap for Alley Cat Allies.
>
> . . .
>
> So, for example, the Putsches are first, so they'll select 1000 photos in ten days. Then we'll select 1000 photos in ten days, et cetera, et cetera.

*Id.* at 8:4 – 9:2. He also stated: "The Putsches agree not to sell or publish any photo with an Alley Cat Allies personnel in it and a cat unless the Alley Cat Allies personnel is cut out, cropped out or otherwise not in the photo," except for "photos of the Plaintiff Elizabeth Putsche as a personnel of Alley Cat Allies," which were "excepted out of that term." *Id.* at 11:3–9. And, the parties agreed to dismiss their claims in the State Court Action and ACA agreed to dismiss the Federal Action. *Id.* at 11:15 – 12:3; Am. Countercl. & 3d Party Compl. ¶ 49(n). All in all, the Settlement Agreement reached in the State Court Action appears to have been a fair and reasonable compromise between the parties. But reasonableness was not to prevail for long.

ACA alleges that Jason Putsche was present in court when the terms of the settlement were read by the judge into the record. Am. Countercl. & 3d Party Compl. ¶ 47. ACA memorialized the Settlement Agreement in writing, listing Jason Putsche, Elizabeth Putsche,

JPP, and ACA as parties to it. *Id.* ¶ 54 & Ex. B. Elizabeth Putsche (and, according to ACA, Jason Putsche, although as noted Jason Putsche's name does not appear on the docket for the State Court Action) then retained new counsel and refused to sign the written agreement, "claiming that certain material terms of the settlement were missing and/or different" from the agreement that the parties reached "in the court's hallway," before it was placed on the record. *Id.*. ¶¶ 57, 60–61.

Elizabeth Putsche (and, according to ACA, Jason Putsche) moved to set aside the Settlement Agreement and the state court, which had before it "the material terms expressed on [ACA's] counsel's June 2 notepad, the transcript of the June 2 hearing and the written settlement agreement," denied the motion on October 19, 2016. *Id.* ¶¶ 61–63; State Ct. Order, ECF No. 37-3. In its Order, it recited the terms of the Settlement Agreement, including

    a. ACA pays $18,000;

    b. All ownership rights to all honeymoon photos will be owned and assigned to the Putsches;

    c. All ownership rights to all head shot photos containing ACA personnel, and do not contain a cat(s), will be owned and assigned to ACA;

    d. The remaining photos will be divided between the parties in draft fashion, with the parties selecting 1,000 photographs per round, with Putsche selecting for the 1,000 photographs . . . ;

    e. . . .

    h. After mediation, Putsche will have 10 days to select the first 1,000 photographs . . . .

    i. The parties shall jointly own the seven allegedly missing [Cat videos];

. . .

    m. The Putsches agree not [to] sell or publish any photo containing ACA personnel, which also contains a cat, unless the ACA personnel is cut out . . . . This provision, however, shall not apply to photographs containing Putsche while she was working at ACA.

    n. The parties shall enter into a mutual release.

o. ACA agrees to dismiss the Federal Action without prejudice until mediation was concluded, at which time the Federal Action would be dismissed with prejudice.

p. The parties agreed to dismiss all claims and counterclaims by and between them in the instant action with prejudice.

State Ct. Order. 1–2. The October 2016 order was not appealed, and ACA claims that "[t]he Parties thereafter began performing under the Settlement Agreement – ACA paid the $18,000 settlement sum, the Federal Action was dismissed, and the parties exchanged their lists of JPP Photographs." *Id.* ¶ 66; *see also* Am. Compl. ¶ 51 (noting that Federal Action was dismissed without prejudice on January 3, 2017).

Jason Putsche continues to dispute ownership of the JPP Photographs and Cat Videos. He filed this suit against ACA on January 27, 2015, seeking a declaration of copyright ownership. ECF No. 1. ACA filed an Answer, ECF No. 6, along with a Counterclaim and Third Party Complaint against Counter Defendant Jason Putsche and Third Party Defendants Elizabeth Putsche and JPP, ECF No. 7.

On April 18, 2017, Jason Putsche notified the Court that it may lack subject matter jurisdiction over his Complaint, given that he did not allege copyright infringement against ACA or seek a remedy pursuant to the Copyright Act. ECF No. 28. He sought leave to amend his Complaint to add a copyright infringement claim, but I noted that the Court cannot grant a party leave to amend to create jurisdiction, if the Court lacks jurisdiction over the complaint. ECF No. 31. In response, Mr. Putsche filed another lawsuit in this Court against ACA, alleging copyright infringement, Compl., ECF No. 1 in *Putsche II*, and sought to voluntarily dismiss his claims before me. ECF No. 32. ACA then filed its Amended Counterclaim and Third Party Complaint in this case. ECF No. 37. I dismissed Jason Putsche's Complaint without prejudice and directed ACA to submit a letter to me if it believed believes that there was authority that would permit it

to proceed with its crossclaim and counterclaim in this case. ECF No. 38. After meeting with the parties by phone, I consolidated *Putsche II* with this case for all purposes. ECF No. 58.

Thus, the parties' claims against each other are proceeding in this case before me, and the operative pleadings are the Amended Complaint, ECF No. 6 in *Putsche II*, and the Amended Counterclaim and Third Party Complaint filed in this case. Mr. Putsche claims copyright infringement (Count I) and seeks a declaration of ownership (Count II). Am. Compl. ¶¶ 54–71. ACA brings claims for Breach of Settlement Agreement (Count I), Breach of Implied Covenant of Good Faith and Fair Dealing (Count II), Promissory/Equitable Estoppel (Count III), Fraud/Misrepresentation (Count IV), Tortious Interference with Existing and Prospective Contracts (Count V), Conversion (Count VI), Copyright Infringement (Count VII) against the Putsches. Am. Countercl. & 3d Party Compl. ¶¶ 68–150.

## **Standard of Review**

The Putsches and JPP, as well as ACA, move to dismiss pursuant to Rule 12(b)(6), under which pleadings are subject to dismissal if they "fail[ ] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a [claim] and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

*Breach of Settlement Agreement (ACA's Count I)*

"A contract is formed when an offer made by one person is accepted by another." *Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 437 (D. Md. 2015) (citing *Prince George's Cty. v. Silverman*, 472 A.2d 104, 112 (Md. Ct. Spec. App. 1984)).[2] "To state a claim for breach of contract, the plaintiff must show that the defendant owed him a contractual obligation and that the defendant breached that obligation." *Id.* (citing *Taylor v. NationsBank, N.A.,* 776 A.2d 645, 651 (Md. 2001)). ACA alleges that Mr. Putsche was present and actively participating in the settlement negotiations and as a party in court when the Settlement Agreement was read into the record, and that the Settlement Agreement resolved the ownership of the JPP Photographs and Cat Videos. Am Countercl. & 3d Party Compl. ¶¶ 31–42. On that basis, ACA claims that both Putsches (and therefore JPP) were parties to the Settlement Agreement and breached it by filing a motion to set it aside, failing to perform their obligations under the agreement, and filing this lawsuit. *Id.* ¶¶ 71–74. The Putsche Parties contend that ACA cannot state a claim for breach of contract against either Jason Putsche or JPP because neither was present for the negotiations of, nor a party to, the Settlement Agreement. Putsche Mem. 12.

It certainly is not clear whether Jason Putsche or JPP was a party to the Settlement Agreement reached in the State Court Action. Only Elizabeth Putsche was a plaintiff in the State Court Action. State Ct. Docket; State Ct. Compl.; State Ct. Ans; Am. Countercl. & 3d Party Compl. ¶ 29 (acknowledging that it was only Elizabeth Putsche who filed the State Court

---

[2] The parties agree that Maryland law applies to interpretation of any contracts between the parties and the state law claims. Putsche Mem. 2, 12, 13, 14, 18 (applying Maryland law); ACA Opp'n & Mem. 12, 17, 20 (applying Maryland law).

Action). Additionally, in state court on June 2, 2016, ACA's counsel repeatedly referred to "Plaintiff" and "Putsche" in the singular when reciting the terms of the Settlement Agreement. Tr. 7:11 – 11:5. And, although Jason Putsche's and JPP's names appear below signature lines on the written memorialization of the Settlement Agreement, the signature lines are unsigned. Also, the state court order denying the motion to set aside the Settlement Agreement similarly referred to "Plaintiff" in the singular. State Ct. Order.

Yet, the state court order also referred to "the Putsches," and in state court on June 2, 2016, ACA's counsel also referred to "the Putsches" going first in the draft selection of photograph, "the Putsches" agreeing "not to sell or publish" certain photographs, and ACA "assign[ing] all ownership rights in all honeymoon photos with the photos taken by Jason (inaudible) Putsche Photography." Tr. 7:11 – 11:5. Moreover, it would have made very little sense for ACA to agree to a settlement that did not resolve claims by both the Putsches, given the large number of photographs and videos that were taken by Jason Putsche. Indeed, the settlement term sheet, with its elaborate alternating selection process for divvying up nearly 15,000 cat pictures, would make no sense at all if it left ACA open to future claims by Jason Putsche that he still had rights to the photos selected by ACA. Therefore, while the Putsche Parties have identified facts that, if believed by a jury, could support a plausible claim that Jason Putsche and JPP were not parties to the Settlement Agreement, I cannot resolve that issue on the record before me, because ACA also has identified a similarly (if not more) plausible set of facts that support the exact opposite conclusion. Therefore, ACA's breach of Settlement Agreement claim survives the Putsche Parties' motion to dismiss. *See Belyakov*, 86 F. Supp. 3d at 437.

"[T]o state a claim for copyright infringement, plaintiff must allege that defendant interfered with plaintiff's exclusive rights to the copyright." *Topline Sols., Inc. v. Sandler Sys., Inc.*, No. ELH-09-3102, 2017 WL 1862445, at *31 (D. Md. May 8, 2017) (citing 17 U.S.C. § 501; *CoStar Grp. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004)). The claim has two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Id.* (quoting *Feist Publications., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Pursuant to the Declaratory Judgment Act, when "an appropriate pleading" is filed in a federal court, presenting "a case of actual controversy within [the court's] jurisdiction" (with exceptions not relevant here), the court "may declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

Here, the parties only challenge the first element of each other's copyright infringement claims. *See* Putsche Mem. 5–6; ACA Opp'n & Mem. 19–20, 26–28.[3] Jason Putsche and ACA

---

[3] Without the copyright infringement claim, this Court lacks jurisdiction over Jason Putsche's declaratory judgment claim, as it must have "an independent basis for jurisdiction over the parties," *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004), and as Jason Putsche already acknowledged, his declaratory judgment claim is not sufficient on its own to confer jurisdiction on this Court. *See* April 18, 2017 Ltr., ECF No. 28 (noting possible lack of subject matter jurisdiction); May 1, 2017 Ltr., ECF No. 32 (seeking to voluntarily dismiss complaint; *Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 969–70 (4th Cir. 1990) ("The mere fact that the complaint discloses that the case involves a copyright dispute, however, does not in itself lead to a conclusion that the case 'arises under' the Federal Copyright Act for the purposes of jurisdiction under 28 U.S.C. § 1338(a). Many disputes over copyright ownership will arise under state law and involve no federal law questions. . . . [A]n action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g. a suit for infringement or for the statutory royalties for record reproduction, ... or asserts a claim requiring construction of the Act, ... or, at the very least, and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. The general interest that copyrights, like all other forms of property should be enjoyed by their true owner is not enough to meet this last

both claim that they hold the copyright to the JPP Photographs and Cat Videos and that the other party infringed their copyright.[4]  Jason Putsche believes that ACA is infringing his copyright by reproducing his photographs, pursuant to its "perpetual, non-exclusive, royalty-free license," without giving him a photo credit as the license requires.  Am. Compl. ¶¶ 56–59.  ACA alleges that the Putsches have "duplicated, published, offered for sale, sold, and otherwise infringed the JPP Photographs" in infringement of its copyright, and continue to do so.  Am. Countercl. & 3d Party Compl. ¶¶ 138–46.

Based on these beliefs that they, and not the opposing party, hold the copyright, both parties argue that the opposing party's copyright infringement claim must be dismissed.  As the Putsche Parties see it, ACA's claim fails because it "does not allege that the JPP Photographs are specially ordered or commissioned works" to bring them within the ambit of the work-for-hire doctrine, 17 U.S.C. § 201(b), or that any of them "agreed to transfer their rights" pursuant to "a transfer agreement that complies with the Copyright Act," 17 U.S.C. § 101 *et seq.*, and as a result, ACA cannot state a claim as the copyright holder.  Putsche Mem. 5–6.  ACA asserts that the JPP Photographs were indeed works made for hire and the Putsches transferred ownership under the Copyright Act, such that ACA, not Putsche, holds the copyright and Putsche's claim

---

test." (quoting *T.B. Harms Co. v. Eliscu,* 339 F.2d 823 (2d Cir. 1964))).  Jason Putsche's claim for declaratory judgment, which seeks a declaration of his copyright ownership and a declaration of ACA's license, does not seek a remedy expressly granted by the Copyright Act. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1967 (2014) ("As infringement remedies, the Copyright Act provides for injunctions, § 502, impoundment and disposition of infringing articles, § 503, damages and profits, § 504, costs and attorney's fees, § 505.").

[4] As for any of the JPP Photographs and Cat Videos that Mrs. Putsche took while she was an ACA employee, the Putsches concede that "she is bound by the state court settlement," and argue, on that basis, that "any infringement claim against her must be dismissed regarding any alleged infringement occurring on or before the date she was released [from all claims against her, pursuant to the Settlement Agreement]: June 2, 2016."  Putsche Mem. 8.  Because it remains to be seen whether Jason Putsche is a party to the Settlement Agreement and if not, how that impacts the terms of the agreement, I will not dismiss the infringement claim against Mrs. Putsche at this time.

fails. ACA Opp'n & Mem. 19–20, 26–28. This also is the basis for ACA's argument that its own copyright infringement claim should survive. *Id.* at 18–20. And, ACA contends that the Settlement Agreement and the alleged "infringement" also prevent Jason Putsche from stating a claim. *Id.* at 26, 31.

### 1. Effects of Settlement Agreement

ACA insists that ownership of the works at issue was resolved in the state court Settlement Agreement, and on this ground alone, Putsche's copyright infringement claim should be dismissed. ACA Opp'n & Mem. 26.[5] Indeed, in the Prayer for Relief in its own copyright infringement claim, ACA asks the Court, *inter alia*, to "[o]rder[] the Putsches to comply with their contractual obligations under the Settlement Agreement." Am. Countercl. & 3d Party Compl. 23. Because, as discussed, there is a plausible claim that Jason Putsche and JPP may not have been parties to the Settlement Agreement, ACA's motion cannot succeed on this ground.

### 2. Nature of Jason Putsche's Claim

Additionally, ACA argues that Jason Putsche's copyright infringement claim must be dismissed because it actually is nothing more than a breach of contract claim. ACA Opp'n & Mem. 31. Noting that the claim is based on ACA's alleged failure to provide attribution and that, "[p]ursuant to the Copyright Act, infringement occurs when '[a]nyone violates any of the exclusive rights provided by sections 106 through 122,'" none of which protects the creator of a work's right to attribution, ACA insists that "a right to credits or attribution is not a protected right under the Copyright Act." *Id.* (quoting 17 U.S.C. § 501).

_____

[5] Perhaps in recognition that the same logic would apply to its own claim, ACA asks that, if the Amended Complaint is dismissed, the Court dismiss ACA's copyright counterclaim so that the parties can litigate their disputes in state court. ACA Opp'n & Mem. 21 n.25.

It is true that the Copyright Act, 17 U.S.C. § 106, identifies "six exclusive rights in copyrighted works," and none of these is the right to attribution. *Philpot v. Media Research Ctr. Inc.*, No. 17-822, 2018 WL 339142, at *9 & n.14 (E.D. Va. Jan. 8, 2018) (noting that in *Hermosilla v. Coca–Cola Co.*, 419 Fed. App'x 917, 919 (11th Cir. 2011), the Eleventh Circuit "[r]ecogniz[ed] that copyright law does not recognize a right to attribution," as did the Eastern Districts of California and Pennsylvania in *UMG Recordings Inc. v. Disco Azteca Distribs., Inc.*, 446 F. Supp. 2d 1164, 1178 (E.D. Cal. 2006), and *Wolfe v. United Artists Corp.*, 583 F. Supp. 52, 56 (E.D. Pa. 1983)). Moreover, while using a copyrighted work "within the scope of one of these 'exclusive rights'" and "without authorization from the copyright holder" constitutes copyright infringement, if a party "puts the work to a use not enumerated in [§ 106], he does not infringe." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 154–55 (1975) (quoting *Fortnightly Corp. v. United Artists Television, Inc*., 392 U.S. 390, 393–95 (1968), *superseded by statute on other grounds as stated in Am. Broadcasting Cos. v. Aereo, Inc.*, 134 S. Ct. 2498, 2504 (2014)).

But, as the Putsche Parties see it, the Amended Complaint "does properly allege infringement of his photographs" because ACA's use of his photographs "without meeting the condition precedent of attribution" was "outside the scope of the license agreement," and such use "implicates the exclusive distribution right of copyright." Putsche Reply & Oppp'n 10. ACA counters that "alleging that attribution was a condition precedent to granting the license lacks merit because the alleged grant of the license occurred before the alleged condition precedent, not vice versa as the law requires to create a condition precedent," and, in any event, "JPP never required ACA to provide photo credit but, rather, simply requested ACA provide such photo credit 'whenever possible.'" ACA Reply 3 (emphasis removed).

Neither party provides any controlling authority in support of its position. My independent research uncovered that, notably, "[w]hen a condition to exercising a license under copyright is that the author's name accompany any reproduction of her work, violation of that condition *could* invalidate the license, subjecting the erstwhile licensee to infringement liability." 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 8D.08[A][3] (2013 & 2017 Supp.) (emphasis added). Further, "[a] licensee infringes the owner's copyright if its use exceeds the scope of its license." *Tattoo Art Inc. v. TAT Int'l LLC*, 498 F. App'x 341, 346 (4th Cir. 2012) (concluding that altering the coloring of the copyrighted drawings exceeded the scope of the license, which permitted the licensee to use the "drawings to create stencils for temporary airbrushed tattoos"; to manufacture, sell, advertise, and distribute the stencils; and "to 'distribute graphic representations (including photographs and/or posters)' of the [drawings] only if it did so 'in connection with the sale of Stencils'" (quoting *ITOFCA, Inc. v. MegaTrans Logistics, Inc.,* 322 F.3d 928, 940 (7th Cir. 2003) (internal quotation marks omitted))). Stated differently, the license "may not exceed the specific purpose for which permission was granted[.]" *Id.* (quoting *Gilliam v. Am. Broad. Cos.,* 538 F.2d 14, 20 (2d Cir. 1976)). Thus, I must consider the terms of Jason Putsche's alleged license to ACA. *See id.*

"Under Maryland law, the interpretation of a contract is ordinarily a question of law for the court." *Jos. A. Bank Clothiers, Inc. v. J.A.B.-Columbia, Inc.*, No. ELH-15-3075, 2017 WL 6406805, at *7 (D. Md. Dec. 15, 2017) (citing *Grimes v. Gouldmann*, 157 A.3d 331, 335 (Md. Ct. Spec. App. 2017)). Further, "[i]t is the role of the court to determine whether a contract is ambiguous." *Id.* (citing *Sy–Lene of Washington, Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 544 (Md. 2003)). "[A] contract is 'ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning.'" *Sumanth v. Essential Brands, Inc.*, No.

MJG-17-2450, 2018 WL 558612, at \*3 (D. Md. Jan. 25, 2018) (quoting *Nova Research, Inc. v.*

*Penske Truck Leasing Co.*, 952 A.2d 275, 283 (Md. 2008)).

> [I]if the contract is ambiguous, "'the court must consider any extrinsic evidence
> which sheds light on the intentions of the parties at the time of the execution of
> the contract.'" *Cnty. Commissioners of Charles Cnty. v. St. Charles Associates
> Ltd. P'ship*, 366 Md. 426, 445, 784 A.2d 545, 556 (2001) (citation omitted).
> Among other things, if a contract is ambiguous, "'extrinsic evidence may be
> consulted to determine ... whether the ambiguous language has a trade usage.'"
> *Mut. Fire Ins. Co. of Calvert Cty. v. Ackerman*, 162 Md. App. 1, 15, 872 A.2d
> 110, 118 (2005) (quoting *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md.
> 383, 404, 488 A.2d 486, 497 (1985)).

*Jos. A. Bank*, 2017 WL 6406805, at \*9 (some citations omitted).

The Putsche Parties assert that the 2008 email exchange between Jason Putsche and

Elizabeth Parowski (on behalf of ACA) is the licensing agreement, for which attribution is a

condition precedent. Putsche Reply & Opp'n 10. In that exchange, Jason Putsche stated:

> I usually come up with a flat fee for the time & distance, and the fee includes all
> images in high res on a disk and the full rights for you to use them as you see fit.
> My only *condition* to your unlimited usage is that I be given bylines on all photos
> (either printed or posted online) whenever possible.

Emails 3 (emphasis added). Thus, under this alleged licensing agreement between Jason Putsche

and ACA, Jason Putsche granted ACA an "unlimited usage" license to his photographs and

included the "condition" that ACA provide attribution to him "whenever possible." *See id.* The

Putsche Parties' position that the "condition" brings Mr. Putsche's claim into the realm of

copyright infringement has support in Nimmer's statement as well as a Federal Circuit opinion,

*Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008).[6] Yet ACA's argument may not be

---

[6] In *Jacobsen*, Robert Jacobsen sued Matthew Katzer and Kamind Associates, Inc. (together
"Katzer/Kamind") for copyright infringement and Katzer/Kamind asserted its open source
license to Jacobsen's material as a defense. 535 F.3d at 1379. Jacobsen appealed the district
court finding that he had not stated a claim for copyright infringement. *Id.* at 1377. The Federal
Circuit considered "whether the use by Katzer/Kamind was outside the scope of the license,"
which permitted users "to copy, modify, and distribute" Jacobsen's software, "provided that"
they "insert[ed] a prominent notice in each changed file stating how and when [they] changed

unfounded, particularly if the email exchange between Jason Putsche and his future wife did not amount to an actual contract. This is because ACA argues that the invoices sent by Jason Putsche/JPP for the photographs and videos he created for ACA state that "full rights" or "full ownership rights" were conveyed, and this, not the email exchange between the Putsches, is the legally operative contract. I cannot resolve the issue on the record before me, which consists of little more than the parties' initial emails and subsequent invoices, employing the terms "condition," "full rights," and "full ownership rights" vernacularly. Whether the emails and or the invoices form the contract between the parties, as well as the meaning of the ambiguous terms "condition," "full rights", and "full ownership rights" requires extrinsic evidence, which will need to be developed during discovery. *See Jos. A. Bank*, 2017 WL 6406805, at *9. Therefore, Jason Putsche's focus on ACA's failure to provide attribution is not a basis for dismissal of his claims.

---

that file," and "provided that" they also either made their modifications freely available, used them only within their organization, "rename[d] any non-standard executables so the names do not conflict with the standard executables," or "ma[d]e other distribution arrangements with [Jacobsen]," when Katzer/Kamind changed the files without doing any of the above. *Id*. at 1379–80, 1382. It stated that the resolution of the issue depended on whether "the terms of the . . . License [were] conditions of, or merely covenants to, the copyright license." *Id*. at 1380. It noted that, "[g]enerally, a 'copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement' and can sue only for breach of contract," but if "a license is limited in scope and the license acts outside the scope, the licensor can bring an action for copyright infringement." *Id*. (quoting *Sun Microsystems, Inc. v. Microsoft Corp*., 188 F.3d 1115, 1121 (9th Cir. 1999)).

In determining whether the terms of the license before it were conditions or covenants (under California law), the court observed that the "License state[d] on its face that [it] create[d] conditions," and it used the language "provided that," which "under California contract law, . . . typically denotes a condition." *Id*. at 1381. Also, it noted that "[t]he conditions set forth in the . . . License [were] vital to enable the copyright holder to retain the ability to benefit from the work of downstream users." *Id*. The Federal Circuit concluded that it was "outside the scope of the . . . License to modify and distribute the copyrighted materials without copyright notices and a tracking of modifications from the original computer files," reasoning that "[t]he attribution and modification transparency requirements directly serve to drive traffic to the open source incubation page and to inform downstream users of the project, which is a significant economic goal of the copyright holder that the law will enforce." *Id*. at 1382.

*3. Copyright Ownership*

Thus, whether either party stated a claim for copyright infringement, as well as whether Jason Putsche's claim for a declaration of copyright ownership survives, depends on whether either party sufficiently alleged copyright ownership. The parties attached Copyright Registrations for the JPP Photographs and Cat Videos, which show that Mr. Putsche and ACA separately registered the copyrights for some or all of the works at issue. Thus, each party's pleading alleges the second element of a claim for copyright infringement, which is the only one that they challenge. *See Patrick Collins, Inc. v. Gillispie*, No. 11-1776-AW, 2012 WL 666001, at *2 (D. Md. Feb. 23, 2012) ("Plaintiff has provided a copy of the internet screen shot from the U.S. Copyright Office's website evidencing that Plaintiff has registered the copyright at issue and has thereby obtained ownership rights."); *Collins v. Sangster*, No. 11-1773-AW, 2012 WL 458905, at *2 (D. Md. Feb. 10, 2012) (same).

But, each party identifies documents that, in its view, qualify as a contract between the parties, to disprove the other's allegations of ownership. The Putsche Parties rely on the 2008 email exchange between Jason Putsche and Elizabeth Parowski to establish that Jason Putsche did not relinquish his copyright; ACA relies on a series of invoices to show that he did. ACA contends that, through the invoices, Jason Putsche transferred copyright to it under 17 U.S.C. § 204(a). ACA Opp'n & Mem. 20. While the Putsche Parties initially argued that the invoices did not effect a transfer of copyright ownership because Jason Putsche did not sign the invoices, Putsche Mem. 5–6, they later conceded that he did, Putsche Reply & Opp'n 6, insisting instead that the language of the invoices does not show transfer of ownership and that the 2008 email exchange is proof that he did not transfer copyright through the invoices, *id.* at 9, 10.

Mr. Putsche insists that it is clear from his email exchange with Mrs. Putsche (then Parowski) that he agreed to full *usage* rights. In his view, the use of "full rights" on twelve out of thirteen invoices and "full ownership rights" on one out of thirteen confirms that he did not relinquish ownership rights to the majority of the works. But, as ACA sees it, the repeated references to "full rights" in the email exchange and in the invoices can mean only one thing— full rights, including copyright, not only usage rights. The parties both offer plausible interpretations of this language, demonstrating that, "if . . . read by a reasonably prudent person, it is susceptible of more than one meaning." *Sumanth*, 2018 WL 558612, at *3. Therefore, it is ambiguous. *See id.* I cannot resolve its meaning on the record before me. *See Jos. A. Bank*, 2017 WL 6406805, at *9. Thus, both parties offer a plausible allegation that they hold the copyright, based on the parties' purported agreement. Therefore, I will deny the cross-motions with regard to the copyright infringement and declaration of ownership claims and allow the case to proceed to discovery.

### *Breach of Implied Covenant of Good Faith and Fair Dealing Claim (ACA's Count II)*

ACA claims that the Putsche Parties' actions "have destroyed and injured ACA's right to receive the benefits of the Settlement Agreement." Am. Countercl. & 3d Party Compl. ¶ 79. Perhaps so, but if they did, this would be a breach of contract claim, because, under Maryland law, "the implied duty of good faith is part of a breach of contract claim rather than a separate claim." *Fid. & Guar. Life Ins. Co. v. United Advisory Grp., Inc.*, No. WDQ-13-40, 2015 WL 164718, at *5 (D. Md. Jan. 12, 2015); *see Mt. Vernon Props., LLC v. Branch Banking & Trust Co.,* 907 A.2d 373, 381-82 (Md. Ct. Spec. App. 2006) ("A breach of the implied duty of good faith and fair dealing is better viewed as an element of another cause of action at law, *e.g.,* breach of contract, than as a stand-alone cause of action for money damages, and we conclude that no

independent cause of action at law exists in Maryland for breach of the implied duty of good faith and fair dealing.").  Consequently, ACA cannot state an independent claim for breach of the implied covenant of good faith and fair dealing, and Count II of its Amended Counterclaim and Third Party Complaint must be dismissed.  *See Fid. & Guar. Life Ins. Co.*, 2015 WL 164718, at *5; *see Mt. Vernon Props.,* 907 A.2d at 381-82.  ACA acknowledges this and asks that the allegations within Count II be considered as part of the allegations in support of Count I, ACA Opp'n & Mem. 14, which I will do.  *See* Fed. R. Civ. P. 1.

### *Promissory/Equitable Estoppel Claim (ACA's Count III)*

To state a claim for promissory estoppel, ACA must allege

1. a clear and definite promise;
2. where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;
3. which does induce actual and reasonable action or forbearance by the promisee; and
4. causes a detriment which can only be avoided by the enforcement of the promise.[ ]

*Macsherry v. Sparrows Point, LLC*, No. ELH-15-22, 2015 WL 6460261, at *12 (D. Md. Oct. 23, 2015) (quoting *Pavel Enterprises, Inc. v. A.S. Johnson Co.,* 674 A.2d 521, 533 (Md. 1996)).  To state a claim for equitable estoppel, ACA must allege that the Putsche Parties' "actions . . . cause[d] a prejudicial change in the conduct of [ACA]," that is, "(1) voluntary conduct or representation, (2) reliance, and (3) detriment."  *Nationwide Mut. Ins. Co. v. Reg'l Elec. Contractors, Inc.*, 680 A.2d 547, 553 (Md. Ct. Spec. App. 1996) (quoting *Grimberg v. Marth,* 659 A.2d 1287 (Md. 1995)).  "Fraud is not an element of promissory estoppel, *Pavel Enters., Inc.,* 674 A.2d at 532 n.29, so Rule 9(b)'s heightened pleading requirement does not apply." *See Palermino v. Ocwen Loan Servicing, LLC*, No. TDC-14-0522, 2015 WL 6531003, at *5 n.5 (D. Md. Oct. 26, 2015.

ACA's pleadings satisfy each of these elements. ACA claims that the Putsches made promises in state court on June 2, 2016 to relinquish purported ownership rights in a subset of the JPP Photographs, in exchange for ACA's release of claims against them and an $18,000 payment, which ACA made in reliance on those promises. Am. Countercl. & 3d Party Compl. ¶¶ 84–90. Specifically, ACA alleges that the Putsches promised to assign ownership rights to ACA for some of the JPP Photographs, to share ownership of the Cat Videos, and not to sell or publish any photo without first cropping out any ACA personnel that appear in it. *Id.* ¶¶ 84. As discussed, ACA adequately alleged that Jason Putsche was a part of the settlement negotiations. And, ACA alleges that the Putsche Parties fail to observe corporate formalities, such that their identities should not be distinguished. *Id.* ¶ 8. Thus, ACA has stated a claim against Jason Putsche and JPP, and I will not dismiss this claim as to either of them. *See Macsherry*, 2015 WL 6460261, at *12; *Nationwide*, 680 A.2d at 553.

As for Elizabeth Putsche, I will dismiss the claim with prejudice because "she does not deny that she is bound by the state court settlement." ACA Opp'n & Mem. 16; *see Macsherry*, 2015 WL 6460261, at *12 ("[P]romissory estoppel [i]s a 'quasi-contract' claim, and . . . '[t]he general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.' " (quoting *Ver Brycke v. Ver Brycke,* 843 A.2d 758, 772 n.9 (Md. 2004))).

### *Fraud/Misrepresentation Claim (ACA's Count IV)*

To state a claim for fraud under Maryland law, ACA

must allege five elements with particularity: (1) the defendant made a false statement of fact; (2) the defendant knew the statement was false or acted with reckless disregard for the truth of the statement; (3) the defendant made the statement for the purpose of defrauding the plaintiff; (4) the plaintiff reasonably relied on the false statement, and (5) the plaintiff was damaged as a result.

*Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013) (quoting *Thompson v. Countrywide Home Loans Servicing, L.P.*, No. L–09–2549, 2010 WL 1741398, at *3 (D. Md. Apr. 27, 2010) (citing *Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534 (Md. 1982))). Also, as noted, Plaintiff must meet the "heightened pleading standard under Rule 9(b)," by "stat[ing] with particularity the circumstances constituting the fraud." *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013) (quoting *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 313–14 (D. Md. 2000)); *see Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013). However, Rule 9(b) permits "intent, knowledge, and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b). Notably, a fraud claim is subject to dismissal when it fails to allege which defendant made the false statement. *See Ridgway v. NovaStar Mortg. Inc.*, No. RDB-09-1814, 2009 WL 5217034, at *4 (D. Md. Dec. 30, 2009) (dismissing fraud claim because "Plaintiffs...fail to identify which Defendants committed the alleged fraud, [and] do not allege almost any other details....that would shed light onto their claim").

ACA claims that the Putsche Parties are liable for fraud and/or misrepresentation because, in the settlement negotiations in the State Court Action, they misled ACA to believe that the Settlement Agreement would be binding on all of the Putsche Parties and that Elizabeth Putsche held copyright to her own works. Am. Countercl. & 3d Party Compl. ¶¶ 97–105. The Putsche Parties contend that ACA "fails to allege the time, place, and contents of the precise false representations attributable to Mr. Putsche," insisting that ACA's "conclusory allegations that 'the Putsches' participated in 'negotiations'" do not suffice because "[a] 'complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient.'" Putsche Mem. 17 (quoting *Sears v. Liken*, 912 F.2d 889, 893 (7th Cir. 1990)

(internal citation omitted)).  ACA counters that "[a]s pled and as the Putsches are well aware, JP's conduct occurred June 2, 2016 at the state courthouse," and that the pleading sufficiently described the contents of the misrepresentative or fraudulent statements. ACA Opp'n & Mem. 16.  But, ACA simply claims that the statements were made during the negotiations, and the June 2, 2016 proceeding was a recitation of an already-reached Settlement Agreement.  ACA fails to allege when or where the parties negotiated the terms.  Moreover, ACA does not allege which Putsche made which statement, thereby failing to meet the heightened pleading standard for fraud.  *See Ridgway*, 2009 WL 5217034, at *4; *Marchese*, 917 F. Supp. 2d at 465; *Piotrowski*, 2013 WL 247549, at *5.  I will dismiss ACA's fraud claim.

### Tortious Interference with Existing and Prospective Contracts Claim (ACA's Count V)

To state a claim for tortious interference with an existing contract (i.e., contractual relations), a plaintiff must allege:

> (1) existence of a contract between plaintiff and a third party;
>
> (2) defendant's knowledge of that contract;
>
> (3) defendant's intentional interference with that contract;
>
> (4) breach of that contract by the third party; and
>
> (5) resulting damages to the plaintiff.

*Discovery Commc'ns, LLC v. Computer Sciences Corp.*, 570 Fed. App'x 306, 306 (4th Cir. 2014) (quoting *Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (Md. 1991)); *see Mansell v. Toys R Us, Inc.*, 673 F. Supp. 2d 407, 415–16 (D. Md. 2009).  To state claim for tortious interference with prospective advantage, a plaintiff must allege the following elements in its complaint:

> (1) intentional and willful acts;
>
> (2) calculated to cause damage to the plaintiffs in their lawful business;
>
> (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and
>
> (4) actual damage and loss.

*Audio Visual Assocs., Inc. v. Sharp Elecs. Corp.*, 210 F.3d 254, 261 (4th Cir. 2000) (citing *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 269 (Md. 1994)); *see Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905 F. Supp. 2d 675, 695 (D. Md. 2012); *Williams v. Wicomico Cty. Bd. of Educ.*, 836 F. Supp. 2d 387, 389 (D. Md. 2011) (citing *K & K Mgmt., Inc. v. Lee*, 557 A.2d 965, 973 (Md. 1989)).

The right to be free from interference with prospective economic advantage is broader than the right to be free from interference with contractual relations, as this right "exists where no contract or a contract terminable at will is involved." *Oce N. Am., Inc. v. MCS Servs., Inc.*, 795 F. Supp. 2d 337, 348 (D. Md. 2011) (citing *Natural Design, Inc. v. Rouse Co.*, 485 A.2d 663, 674 (Md. 1984)). Wrongful or malicious interference with economic relations occurs by "conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Alexander & Alexander Inc.*, 650 A.2d at 271. The Maryland Court of Appeals has defined this wrongful or unlawful conduct as "wrongful or unlawful acts includ[ing] common law torts and violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Id.* (citing *K & K Mgmt.*, 557 A.2d at 979).

ACA alleges that it "has contractual and prospective contractual relationships with third parties related to promotional and marketing material," from which it derives revenue. Am. Countercl. & 3d Party Compl. ¶ 111. It claims that the Putsches were aware of these relationships and wrongfully interfered with and injured them "with the sole purpose of interfering with those relationships and harming ACA's business and revenues." *Id.* ¶¶ 112–15. ACA also alleges that Jason Putsche interfered with the Settlement Agreement that "Elizabeth Putsche had actual and/or apparent authority to enter into" and indeed entered into. *Id.* ¶¶ 116–

17, 119.  Yet ACA claims, in the same count, that "Jason Putsche was present and a direct participant in the settlement agreement entered into between the Parties."  *Id.* ¶ 118.  ACA claims that, "[a]s a result of Jason Putsche's wrongful actions, the Putsches, individually and collectively, have breached the settlement agreement and failed and refused to perform their obligations thereunder."  *Id.* ¶ 122.

The Putsche Parties argue that the allegations of interference with contractual relationships related to promotional and marketing material and interference with the Settlement Agreement "are the type of conclusory, unwarranted deductions of fact or unreasonable inferences that cannot satisfy the federal pleading standards," as "[t]here are no allegations about how it was that the Putsches 'interfered' with any contracts or prospective relationships between ACA and third-parties."  Putsche Mem. 18.  Additionally, they contend

> "[t]he types of unlawful means which have been held to result in liability for interference with prospective advantage . . . are violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith."

*Id*. at 19 (quoting *K & K Mgmt.*, 557 A.2d at 979).  In their view, ACA "does not allege that the Putsches engaged in any of this type of conduct."  *Id.*  Finally, they assert that Jason Putsche's role in the Settlement Agreement prevents ACA from stating a claim for interference with that agreement.  *Id*. at 20.

ACA clarifies in its Opposition that it is alleging that Jason Putsche "has intentionally interfered with the Agreement between ACA and [Elizabeth Putsche] by refusing to permit the selection of JPP Photographs to occur and filing a lawsuit against ACA."  ACA Opp'n & Mem. 17.  ACA also asserts in its Opposition that "[t]he Putsches have further intentionally interfered with ACA's economic advantage and ability to obtain revenue from the use of the JPP Photographs in marketing and promotional material by failing to perform under the Agreement

and filing the instant action disputing their contractual obligations." *Id.*  But, an opposition to a dispositive motion is not an appropriate vehicle for amending a pleading. *See Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015).

ACA's allegations – even including those improperly presented in its Opposition – are not sufficient to state a claim for tortious interference with contractual relations.  It has not plausibly alleged the existence of any contracts with third parties or the breach of any such contract.  Rather, its allegations are vague and conclusory and do not rise above the level of speculation.  This is not sufficient to state a claim.  As for the Settlement Agreement, ACA alleges that Jason Putsche participated in it and breached it, and therefore cannot state a claim based on the contract being between ACA and a third party and the third party breaching it.  This claim must be dismissed. *See Discovery Commc'ns*, 570 Fed. App'x at 306; *Fowler*, 598 A.2d at 802.

Nor does ACA state a claim for tortious interference with prospective advantage.  ACA's boilerplate allegations that the Putsches "wrongfully, intentionally and in bad faith interfered" with ACA's prospective advantage, "utilized dishonest, unfair, and improper means to do so," and "took these actions without justification or privilege," Am. Countercl. & 3d Party Compl. ¶¶ 113–15, are not allegations of "conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships."  *See Alexander & Alexander*, 650 A.2d at 271.  Accordingly, ACA's claim must be dismissed.  *See id.*

### *Conversion Claim (ACA's Count VI)*

ACA consents to dismissal of its conversion claim.  ACA Opp'n & Mem. 18.  Accordingly, this claim is dismissed.

**Conclusion**

In sum, because both parties have stated plausible claims, I will deny ACA's motion, ECF No. 62, in its entirety and deny the Putsche Parties' motion, ECF No. 61, in part as to ACA's claims against Jason and Elizabeth Putsche and JPP for breach of contract and copyright infringement, and its claim against Jason Putsche and JPP for promissory and equitable estoppel (ACA's Counts I, III, VII). But, because breach of the implied covenant of good faith and fair dealing (ACA's Count II) is not a stand-alone cause of action under Maryland law, ACA fails to state a claim for fraud (ACA's Count IV) or tortious interference with contractual relations or prospective advantage (ACA's Count V), and ACA consents to the dismissal of its conversion claim (ACA's Count VI), I will grant the Putsche Parties' motion in part and dismiss Counts II, IV, V, and VI of ACA's Amended Counterclaim and Third Party Complaint. And, I will dismiss the promissory estoppel/equitable estoppel claim (ACA's Count III) as to Elizabeth Putsche only.

These dismissals will be with prejudice, as the Putsche Parties raised the deficiencies in their pre-motion conference request, ECF No. 19, and ACA had the opportunity to amend its pleading to cure these deficiencies. Despite that guidance, ACA failed to cure its pleading deficiencies. Thus, considering ACA's failure to state a claim despite the helpful input it received, dismissal with prejudice is appropriate. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013); *see also Adams v. Sw. Va. Reg'l Jail Auth.*, 524 Fed. App'x 899, 900 (4th Cir. 2013); *Proctor v. Wells Fargo Bank, N.A.*, No. PWG-17-113, 2018 WL 572861, at *10 (D. Md. Jan. 25, 2018).

A separate order will issue.


Date: <u>February 8, 2018</u>                              _____/S/_____
                                                          Paul W. Grimm
                                                          United States District Judge

lyb